## UNITED STATES v. 306 CASES CONTAINING SANDFORD TOMATO CATSUP WITH PRESERVATIVE.

### No. M–698.

District Court, E. D. New York.

May 24, 1944.

Harold M. Kennedy, U. S. Atty., and Morris K. Siegel, Asst. U. S. Atty., both of Brooklyn, N.Y., for libelant.

Breed, Abbott & Morgan, of New York City (Michael F. Markel, of counsel), for claimant, Libby, McNeill & Libby.

MOSCOWITZ, District Judge.

Libelant prays for a decree of this Court condemning approximately 306 cases of an article of food labelled in part "Sandford Tomato Catsup with Preservative". Claimant concedes that the article under seizure was shipped by it in interstate commerce to this district, and that it was seized by a Deputy United States Marshal within the jurisdiction of this Court.

The libel charges that the seized article is misbranded within the meaning of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 343(g) (1). If it is misbranded, it is subject to seizure and condemnation by authority of 21 U.S.C.A. § 334. Under the applicable section of the Act, a food shall be deemed to be misbranded "if it purports to be or is represented as a food for which a definition and standard of identity has been prescribed * * * unless (1) it conforms to such definition and standard * * *." Acting pursuant to 21 U.S.C.A. §§ 341 and 371, the Federal

Security Administrator issued an order, effective January 1, 1940, promulgating a definition and standard of identity for tomato catsup (4 F.R. 3454), and subsequently refused to amend the prescribed standard, upon the application of the Canners' League of California, of which claimant was a member, so as to permit the addition of benzoate of soda as an optional ingredient (6 F.R. 209).

The product under seizure conforms in all respects to the definition and standard promulgated by the Administrator for tomato catsup, except that it contains in addition 1/10 of 1% of benzoate of soda. The label on the seized product reads: "Sandford Tomato Catsup with Preservative" (all in same size type) "This product does not conform to the government standard for catsup. Contains 1/10 of 1% of benzoate of soda." Claimant contends (1) that it is not marketing tomato catsup, but an entirely separate and different product designated as "tomato catsup with preservative", for which it claims no standard has been promulgated and which it has truthfully labelled, and (2) that the Administrator's refusal to permit the addition of benzoate of soda as an optional ingredient had no reasonable basis in fact and that the standard is therefore void.

■■■ To give recognition to a distinction such as claimant asserts would be to thwart the entire purpose of the legislation herein sought to be enforced. The Congressional objective in authorizing the promulgation of standards for foods and requiring compliance therewith is stated in the statute to be to "promote honesty and fair dealing in the interest of consumers". Experience had shown that truthful labelling of a product was no protection to the bulk of the consuming public; if a product gave the appearance of being a certain food, the public assumed that it contained only those ingredients which were commonly associated with that food and the label was never consulted. Even a reference to the label might not enlighten a consumer on the nature of unfamiliar ingredients there set forth. To remedy this general situation, Congress authorized an administrative officer (originally the Secretary of Agriculture, whose functions in this respect were subsequently transferred to the Federal Security Administrator), either on his own initiative or upon application of interested persons, to determine what ingredients in a particular food would

promote honesty and fair dealing in the interest of consumers. When a standard has been promulgated for any food, any product which "purports to be" or "is represented as" that food must conform to the standard or it is misbranded and subject to condemnation. That an additional ingredient not mentioned in the standard is non-deleterious is immaterial; the contents of the standard alone must be complied with. That the additional ingredient is plainly set forth on the label is immaterial; the contents of the standard alone must be complied with. As the Court stated in the recent case of Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 63 S.Ct. 589, 596, 87 L.Ed. 724, where the addition of vitamin D to a product which in other respects complied with the standard for farina was conceded to be a non-conformity to the standard, even though vitamin D was a non-deleterious and even beneficial substance:

"Both the text and the legislative history of the present statute plainly shows that its purpose was not confined to a requirement of truthful and informative labeling. False and misleading labeling had been prohibited by the Pure Food and Drug Act of 1906. * * * But it was found that such a prohibition was inadequate to protect the consumer from 'economic adulteration', by which less expensive ingredients were substituted * * * so as to make the product, although not in itself deleterious, inferior to that which the consumer expected to receive when purchasing a product with the name under which it was sold. Sen.Rep. No. 493, 73d Cong., 2d Sess., p. 10; Sen. Rep.No. 361, 74th Cong., 1st Sess., p. 10. The remedy chosen was not a requirement of informative labeling. Rather it was the purpose to authorize the Administrator to promulgate definitions and standards of identity 'under which the integrity of food products can be effectively maintained' (H. R.Rep. 2139, 75th Cong., 3d Sess., p. 2; H.R.Rep. 2755, 74th Cong., 2d Sess., p. 4), and to require informative labeling only where no such standard had been promulgated, * * *."

■■■ In acting on his own initiative, it was evidently the Administrator's judgment that the promulgation of a standard for tomato catsup would promote honesty and fair dealing in the interest of consumers. After due deliberation being given to benzoate of soda as an ingredient, either in the standard or as a permitted optional, the

Administrator's rejection thereof bars the inclusion of that chemical in any food which purports to be tomato catsup. It is not necessary to decide this Court's power to review the Administrator's determination in this respect for, assuming the power, his decision is held to be correct. The evidence indicates that the only purpose in adding benzoate of soda is to effect an economy in the cost of manufacture which amounts to approximately 25% difference in consumer price, resulting in a material economic advantage over competitors who achieve the same preservative quality by the use of a greater quantity of sugar, an approved ingredient. This economic adulteration is the very fraud which the statute was designed to combat. Although the product under seizure is sold only in No. 10 cans (7 lbs.) to institutional users for cocktail sauces and cooking, the evidence indicated that some of it found its way to individuals via unlabeled cruets on the counters of luncheonettes and small restaurants. The Administrator may well have found that honesty and fair dealing required that patrons of these luncheonettes were entitled to assume that the product they were using was the same tomato catsup they would purchase for home consumption. Catsup sold for home use in small bottles did not contain benzoate of soda. This would be a reasonable basis for the Administrator's refusal to amend the standard.

■ It requires no extensive argument to reveal the obvious fallacy of claimant's contention that its product is one for which no standard has been promulgated. If every food for which a standard has been prescribed would become an entirely different food by the addition of one ingredient which apparently had no effect upon its taste or appearance, it would be a simple matter to completely evade and circumvent the purpose of food standards.

That the product seized purports to be tomato catsup is apparent from the evidence. The word "purport" is defined in Webster's New International Dictionary (1940) as meaning: "To convey, imply or profess outwardly, as one's (esp. a thing's) meaning, intention, or true character; to have the appearance, often specious appearance, of being, intending, claiming, etc. (that which is implied or inferred)." Certainly the product under seizure gave the appearance of being tomato catsup; it conveyed the impression, implied and professed outwardly, to the ordinary person that it was tomato catsup, and in fact it was just that. Claimant's own witness testified that it looked, smelled and tasted exactly like catsup and that even an expert would have difficulty in differentiating it from tomato catsup without analysis. Some of the invoices called it "tomato catsup" or "catchup" and made no mention of a preservative. Most of the persons who purchased it thought of it only as catsup and were not aware that it contained benzoate of soda.

The evidence clearly shows that the seized product is a food which purports to be tomato catsup, a food for which a definition and standard of identity has been promulgated, and that it does not conform to such standard in that it contains benzoate of soda, an ingredient not approved by the standard. It is therefore misbranded within the meaning of 21 U.S.C.A. § 343(g)(1) and is herewith condemned.

Settle findings and decree on notice.