UNITED STATES v. NINETY-NINE CASES, etc. SOUTHLAND FOUNTAIN FRUIT et al.

No. 1030 and Consolidated Cases.

United States District Court
E. D. Tennessee, S. D.

Sept. 10, 1948 and Oct. 27, 1949.

O. T. Ault, United States Attorney, Chattanooga, Tennessee, for plaintiff.

Charles A. Noone, Chattanooga, Tennessee, for defendant.

DARR, Chief Judge.

The suit seeks to condemn articles of food, under the provisions of 21 U.S.C.A. § 342(b) (2) and § 343(g), upon the claim of adulteration and misbranding. The claimant made answer and denied these contentions.

The products seized were small fourteen ounce jars, which claimant sold to wholesale groceries and retail stores, and bore different labels as follows: "Southland Peach Fountain Fruit (Delicious as a Spread)", "Southland Pineapple Fountain Fruit (Delicious as a Spread)", and "Tara Fruit of the Good Earth Pineapple Fountain Fruit."

The parties have agreed that the products were introduced in commerce and that they did not come up to the required standard of preserves. Therefore, the single question for determination is whether the products purport to be, or are represented as, the standardized articles, peach and pineapple preserves, within the meaning of 21 U.S.C.A. § 343(g).

An examination of the jars shows that the labels contain the name of the fruit or tradename in large letters and the words "Fountain Fruit" are in small letters. The term "fountain fruit" does not have a recognized meaning as a food product. A product of this character has not been submitted to the trade in containers similar to the ones claimant used. So-called fountain fruit appears to have been generally put upon the market for family use in small containers of about six ounces and plainly labeled by such words as "Topping", "Sundaettes", etc., or this type product has been sold in large containers of a quart or more to confectioners and soda fountains for use in their business. The size jar used by the claimant is comparable to that ordinarily used for preserves and jams.

The proof reflects that the merchants bought these products with the idea that they were preserves, that they were mixed upon the shelves of the retail stores with real preserves, jams and jellies. So the libelant claims that this conduct amounted to a purporting of furnishing the products to the public as preserves. The claimant says that the products were plainly labeled "fountain fruit" and that there was no deception or imposition.

There are some cases defining the Congressional meaning of the word "purport" as used in this statute. United States v. 306 Cases Containing Sandford Tomato Catsup, D.C., 55 F.Supp. 725; Libby, McNeill & Libby v. United States, 2 Cir., 148 F.2d 71.

■■ Also, the statute may be violated without any wrongful intent. United States v. 11¼ Dozen Packages, etc., D.C., 40 F.Supp. 208.

Considering this construction of the word "purport" and in view of all the testimony and considering that I have viewed the labels themselves together with the pictures of the products in stores, I am of the opinion that these products did purport to be preserves.

It must be remembered that the products were on sale during the time when there was a scarcity of sugar and the buying public was anxious to obtain sweets for family use. I have the impression that under all these conditions a housewife or other purchaser would buy these products thinking they were preserves, particularly when it is further considered that this type of food had never been on the market for table use as a spread or as a substitute for preserves.

This was, indeed, a new venture in trying out a table food, and had the claimant plainly labeled the food by true description, the label being in bold type, recommending it for use in place of preserves, jam or jelly, there could have been no objection.

For the reasons stated, however, I feel it my duty to sustain the proceedings for condemnation.

The claimant, so the proof discloses, ceased the manufacture of the products at the time these proceedings were begun and, as I understand, has no plans or desire to manufacture the products in the future.

In view of this and of the whole case, I direct that the claimant be granted the privilege, upon making proper bond, of taking over the condemned products, the

same to be used and disposed of under the supervision of the Food and Drug Administration. If claimant elects not to retake the property, application will be made for disposition thereof in some manner.

Proposed findings of fact and conclusions of law will be submitted.

Order accordingly.

### Supplemental Opinion.

On September 10, 1948, a memorandum for the judgment was announced and filed, but no judgment has been entered pursuant thereto. The delay has been caused by a desire of the plaintiff to make application for a change in certain portion of the original memorandum for the judgment, which portion was obiter dicta and is as follows: "This was, indeed, a new venture in trying out a table food, and had the claimant plainly labeled the food by true description, the label being in bold type, recommending it for use in place of preserves, jam or jelly, there could have been no objection."

Upon consideration the Court feels that this statement might be misleading and the further consideration that this announcement had no merit insofar as the decision of the controversy is concerned, the same is deleted and taken from the original memorandum for the judgment and will not be considered a part thereof.