TYLER PHARMACAL DISTRIBUTORS, INC., Plaintiff-Appellant,

v.

U. S. DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, Defendant-Appellee.

UNITED STATES of America, Plaintiff-Appellee,

v.

TYLER PHARMACAL DISTRIBUTORS, INC., a corporation, Defendant-Appellant.

Nos. 16637, 16643.

United States Court of Appeals Seventh Circuit.

March 5, 1969.

Rehearing Denied April 3, 1969.

Jesse H. Brown, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., John Peter Lulinski, Michael B. Nash, Asst. U. S. Atty., Chicago, Ill., for appellee;

William W. Goodrich, Asst. Gen. Counsel, Joanne S. Sisk, Charles K. Marr, Attys., Dept. of Health, Education, and Welfare, Washington, D. C., of counsel.

Before HASTINGS, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

We have before us two appeals by Tyler Pharmacal Distributors, Inc. (Tyler) from orders entered in two actions, consolidated in the district court for purposes of trial. Each action involved an article of drug known as "Pro-Forma".

Pro-Forma is represented as being safe and effective for use by women to make their breasts fuller and firmer and to restore them to feminine beauty. The active ingredient said to cause this improvement is known as Extract of Galega.

Tyler began selling Pro-Forma in 1956, using the same formula, advertising and labeling continuously through the time of trial. Tyler advertises and sells Pro-Forma through the mails, claiming the drug is safe for use.

Tyler did not seek nor obtain approval of the product as a "new drug" as required by § 505 of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 355 (the Act).[1]

---

1. 21 U.S.C. § 355. (Section 505)

(a) No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) of this section is effective with respect to such drug.

(b) Any person may file with the Secretary an application with respect to any drug subject to the provisions of subsection (a) of this section. Such person shall submit to the Secretary as a part of the application (1) full reports of investigations which have been made to show whether or not such drug is safe for use and whether such drug is effective in use; (2) a full list of the articles used as components of such drug; (3) a full statement of the composition of such drug; (4) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug; (5) such samples of such drug and of the articles used as components thereof as the Secretary may require; and (6) specimens of the labeling proposed to be used for such drug.

\* \* \* \* \*

(h) An appeal may be taken by the applicant from an order of the Secretary refusing or withdrawing approval of an application under this section. Such appeal shall be taken by filing in the United States court of appeals for the circuit wherein such applicant resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia Circuit, within sixty days after the entry of such order, a written petition praying that the order of the Secretary be set aside. \* \* \*

A Post Office fraud complaint was issued against Tyler and a hearing thereon was held in January, 1958. The Hearing Examiner recommended that a fraud order be issued pursuant to 39 U.S.C.A. § 259. On July 14, 1958, a Departmental Decision reversed the initial decision of the Hearing Examiner for the reason "that the complainant failed to prove a fraud in fact."

On March 22, 1963, the Food and Drug Administration held a hearing at which Tyler had been charged with an alleged violation of § 301(a) of the Act with misbranding, "since the article [Pro-Forma] is of no value and will have no effect." A record of the hearing was sent to Tyler. No further action in this misbranding matter has been taken.

On July 21, 1966, a complaint for injunction was filed in the district court by the United States of America against Tyler and two of its officers, seeking to enjoin them from shipping the drug Pro-Forma in interstate commerce in violation of 21 U.S.C.A. § 355, *supra.* The complaint alleged that Pro-Forma was a new drug within the meaning of § 201(p) of the Act, 21 U.S.C.A. § 321 (p),[2] and that there was no approved new drug application (NDA) effective for the drug. The primary issue raised was whether Pro-Forma was a new drug because it was not generally recognized among qualified experts as safe and effective for its intended use.

On October 16, 1966, a pre-trial conference was held before District Judge Hubert L. Will. At that time, rather than litigate the new drug issue, Tyler offered to file a NDA for Pro-Forma within 30 days, and stated that if the NDA was denied, sale of the drug would immediately be stopped. Thereupon, Judge Will entered an order dismissing the complaint, with leave to reinstate if the NDA was not filed within 30 days.

On November 15, 1966, Tyler filed a NDA for Pro-Forma. It contained testimonials by French doctors, a report by an American physician, a laboratory report and a copy of the Post Office Departmental Decision.

Upon review of the NDA by the Food and Drug Administration, it was found inadequate to establish that Pro-Forma was safe and effective for its claimed uses. Tyler was given notice of the proposed disapproval. It requested a hearing, which was held on March 21, 1967. The Government presented testimony of three scientific witnesses who had reviewed the NDA. Tyler rested without offering testimony. The hearing was concluded and the matter was taken under advisement by the Hearing Examiner.

Eight days later, on March 29, 1967, and while the matter was under advisement by the Hearing Examiner, Tyler wrote to the Food and Drug Administration seeking to withdraw its NDA. Tentative findings and conclusions adverse to Tyler were issued by the Hearing Examiner on April 14, 1967. The request to withdraw the NDA was denied by letter dated April 25, 1967.

2. 21 U.S.C. § 321. (Section 201)
   For the purposes of this Chapter—
   (p) The term "new drugs" means—
   (1) Any drug * * * the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed to be a "new drug" if at any time prior to the enactment of this chapter it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use; or
   (2) Any drug * * * the composition of which is such that such drug, as a result of investigations to determine its safety and effectiveness for the use under such conditions, has become so recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions.

On April 5, 1967, prior to receiving notice of the denial of its request to withdraw its NDA, in cause No. 67 C 537, Tyler filed its complaint in the district court, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C.A. § 2201, against the U. S. Department of Health, Education and Welfare; Food and Drug Administration; James Goddard, Commissioner of Food and Drugs; and James H. Guill, Jr., District Director of Food and Drug Administration. It sought a declaration that Pro-Forma be declared to be "not a new drug" within the meaning of the Act. It also sought an injunction restraining government employees in their official capacities from enforcing the Act against Tyler. A temporary restraining order was issued on May 2, 1967 for 10 days, and renewed for an additional 10 days on May 12, 1967.

Tyler's complaint alleged that it had never received a single complaint of any harmful or toxic effects from the use of Pro-Forma. Attached to the complaint were affidavits from several French physicians stating they had prescribed Extract of Galega for patients without observing any toxic or ill effects; also, a number of exhibits setting out most of the procedural history of this matter as we have above described.

In No. 67 C 825, in the district court, the Government reinstituted its prior injunction action against Tyler.

The Government filed a motion to dismiss Tyler's action for declaratory judgment on the grounds that (1) it was an unconsented suit against the United States; (2) Tyler had failed to exhaust its administrative remedies; and (3) the complaint failed to state a claim appropriate for the exercise of the court's discretion under the Federal Declaratory Judgments Act or for injunctive relief.

The Government also moved for summary judgment in Tyler's declaratory judgment action and in the Government's related injunction action.

The district court, for reasons stated in a well-considered unpublished memorandum opinion, granted the Government's motion to dismiss Tyler's action for declaratory judgment and injunctive relief. In No. 16637, Tyler appeals therefrom.

The trial court granted the Government's motion for summary judgment in its related injunction action against Tyler. In No. 16643, Tyler appeals from this judgment.

The trial court found that Tyler's defense in the Government's suit constituted its allegations for relief in its own action, the same basic issue in both actions being whether Pro-Forma is a new drug within the meaning of the Act, 21 U.S.C.A. § 321(p), *supra*. The court found it was a new drug. We affirm.

The interstate shipment of a new drug without prior clearance was first prohibited in the passage of the Federal Food, Drug and Cosmetic Act in 1938. 21 U.S.C.A. § 355(a), *supra*. A new drug was first defined as a drug, the composition of which is such that it is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety of drugs, *as safe for use* under the conditions prescribed, recommended or suggested in the labeling thereof. 21 U.S.C.A. § 321 (p), 52 Stat. 1041 (1938).[3]

The trial court here recognized the limited 1962 amendments and the inclusion of the grandfather clause, consistent with *Allan*. The 1962 amendment added the words "and effectiveness" after the word "safety" and the words "and effective" after the word "safe". Thus until 1962, the controlling words in the definition of a new drug was the lack of general recognition by experts

3. For a precise and well-considered treatment of the 1938 definition of a "new drug", the 1962 amendments, as well as the statement of the so-called "grandfather clause", see Chief Judge Murrah's opinion in United States v. Allan Drug Corporation, 10 Cir., 357 F.2d 713, 717, 720 (1966), cert. denied, 385 U.S. 899, 87 S.Ct. 203, 17 L.Ed.2d 131.

*as to its safety.* After 1962, the lack of general recognition was extended to drugs "as safe and effective for use" as recommended in its labeling.

■ The grandfather clause exemption provided that the "effectiveness" amendment in 1962 shall not apply to any drug which on October 9, 1962, (1) was commercially used or sold in the United States; (2) was not a new drug as defined in the 1938 Act then in force; and (3) was not covered by an effective NDA. Thus as the district court pointed out: "Only if Pro-Forma was marketed before 1962 for exactly the same uses for which it is presently being sold and was generally recognized by qualified experts as safe for those uses, is it exempt under this grandfather clause from the test of general recognition by experts as being both safe and effective for its claimed uses." See United States v. Allan Drug Corporation, *supra* at 719.

■ In support of its motion for summary judgment, the Government submitted the affidavits of four qualified experts, all of whom concluded that Pro-Forma has never been generally recognized as safe and effective for its intended uses. Tyler submitted no counter affidavits, apparently relying on the exhibits attached to and the allegations contained in its declaratory judgment complaint. The trial court found, however, that such showing by Tyler was addressed to the issue of fact as to whether the drug is or is not safe. That is not the controlling issue. The new drug provisions of the Act apply without reservation to all new drugs. Rutherford v. American Medical Association, 7 Cir., 379 F.2d 641, 644 (1967), cert. denied, 389 U.S. 1043, 88 S.Ct. 787, 19 L.Ed.2d 835; Tutoki v. Celebrezze, 7 Cir., 375 F.2d 105, 107, fn. 4 (1967); AMP Incorporated v. Gardner, 2 Cir., 389 F.2d 825, 831 (1968), cert. denied, 393 U.S. 825, 89 S.Ct. 86, 21 L.Ed.2d 95.

■ The district court correctly found that, in light of the record before it, the Government had established by qualified experts that Pro-Forma *has* never been generally recognized as safe and effective for its recommended uses. It necessarily follows that the court properly concluded and held that Pro-Forma is a new drug under 21 U.S.C.A. § 321(p) of the Act, for which Tyler needs an effective NDA pursuant to § 355(a) of the Act. United States v. Allan Drug Corporation, *supra;* United States v. 354 Bulk Cartons, Etc., D.C.D. N.J., 178 F.Supp. 847, 852–853 (1959); Merritt Corporation v. Folsom, D.C.D.C., 165 F.Supp. 418 (1958).

■ We have examined Tyler's objections to the affidavits in support of summary judgment here and find them unpersuasive. Quite to the contrary, we agree with the rationale of the Second Circuit's opinion in AMP Incorporated v. Gardner, *supra,* 389 F.2d at 831, and find that this is an appropriate case for summary judgment. On the question of whether there is general recognition among qualified experts of the product's safety and effectiveness there is no issue of material fact remaining to be tried. Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. Summary judgment on the Government's motion was properly granted.

The remaining question is whether the district court properly dismissed Tyler's complaint for declaratory judgment and injunctive relief on the Government's motion on the three grounds hereinabove set out.

We do not find it necessary to reach and decide the question of whether Tyler's action was an unconsented suit against the United States.

■ There is merit in the district court's dismissal because Tyler had failed to exhaust its administrative remedies. As hereinbefore shown, Tyler filed a NDA for Pro-Forma. Eight days later it sought to withdraw its NDA, which request was subsequently denied. Before receiving such denial, it filed the instant action. The administrative proceedings Tyler instituted are governed by 21 U.S.C.A. § 355. Section 355(h) therein provides for an appeal on the

record to the United States court of appeals from any order of the Secretary refusing approval of a NDA. Rutherford v. American Medical Association, *supra*, 379 F.2d at 643; Tutoki v. Celebrezze, *supra*, 375 F.2d at 107. Cf. Turkel v. Food and Drug Administration, Dept. of H., E. and W., 6 Cir., 334 F.2d 844 (1964), cert. denied, 379 U.S. 990, 85 S.Ct. 704, 13 L.Ed.2d 611.

Whatever the present status of Tyler's NDA, until a final administrative decision on the NDA is made Tyler is not adversely affected. When Tyler is affected, review lies in the court of appeals. Tyler has not exhausted its administrative remedies.

Finally, the district court held that, aside from other considerations, it would exercise its discretion and dismiss the suit, such action being within its allowable discretion under the Federal Declaratory Judgment Act. Such declaratory relief is permissive and not absolute. Allstate Insurance Company v. Charneski, 7 Cir., 286 F.2d 238, 244 (1960).

As hereinabove stated, the trial court found the same basic issue in both of the instant actions to be whether Pro-Forma is a new drug within the meaning of the Act; and finally that Tyler would not be prejudiced by the dismissal of its action. Chicago Furniture Forwarding Co. v. Bowles, 7 Cir., 161 F.2d 411 (1947). We hold that the district court properly exercised its discretion in dismissing the complaint.

The trial court further indicated that had it not dismissed the complaint it would have been compelled to render summary judgment thereon for the Government.

For the foregoing reasons, the judgments, which are the subject of the instant appeals in Nos. 16637 and 16643, together with the equitable relief set out therein, are hereby affirmed.

Affirmed.