UNITED STATES of America,
Libelant,

v.

An ARTICLE OF DRUG Consisting of 572 Boxes, More or Less, of an Article LABELED in Part:

(BOX)

"FURESTROL VAGINAL SUPPOSITORIES  *  *  *"

The Norwich Pharmacal Company, Claimant.

Civ. A. No. 9398.

United States District Court
N. D. Georgia,
Atlanta Division.

July 12, 1968.

Beverly B. Bates, Asst. U. S. Atty., Atlanta, Ga., for the United States

George M. Hopkins, of Newton, Hopkins, Jones & Ormsby, Atlanta, Ga., for claimant.

LEWIS R. MORGAN, District Judge.

On or about February 26, 1965, and March 17, 1965, the Eaton Laboratories, Division of The Norwich Pharmacal Company, Norwich, New York, shipped 572 boxes of an article of drug Furestrol Vaginal Suppositories to Atlanta, Georgia. On April 13, 1965, the United States filed a Libel of Information against the above article. The libel alleges that the aforesaid article of drug is a "new drug", within the meaning of 21 U.S.C. § 321(p), which may not be introduced or delivered for introduction into interstate commerce under 21 U.S. C. § 355(a), since no application under 21 U.S.C. § 355(b) has been approved for that drug. On April 14, 1965, the United States Marshal seized the above-described article pursuant to process duly issued from this Court. Subsequently, The Norwich Pharmacal Company, on May 5, 1965, filed claim under oath as owner of the seized article and answered, admitting that the article of drug had been shipped in interstate commerce as alleged, that the article was within the jurisdiction of this Court, and that there is no approved new drug application effective for the article of drug, pursuant to 21 U.S.C. § 355(b). Claimant denied that the article of drug was a "new drug" within the meaning of 21 U.S.C. § 321(p).

The drug Furestrol Vaginal Suppositories is composed of two therapeutically active ingredients—diethylstilbestrol, a synthetic estrogen, or female hormone; and nitrofurazone, an antibacterial agent which claimant markets under the brand name of "Furacin". Diethylstilbestrol is the drug which is almost universally used to treat the disease conditions atrophic vaginitis, atrophic vulvitis and atrophic cervicitis and is generally recognized among qualified experts as being safe and effective for those purposes. Nitrofurazone is generally recognized by qualified experts as safe and effective for control of surface bacterial infections when the causative bacteria are those to which nitrofurazone is bactericidal and provided the dosage is strong enough to kill those bacteria. However, nitrofurazone is not generally recognized as being safe and effective for use alone in the treatment of atrophic vaginitis, atrophic vulvitis, or atrophic cervicitis. The drug Furestrol is indicated for "the treatment of atrophic vulvitis, vaginitis, cervicitis and the resulting irritation, leukorrhea and malodor". This drug was first shipped in interstate commerce in July, 1964. At that time, it was the first and only vaginal suppository containing the active ingredients diethylstilbestrol and nitrofurazone in the quantities stated in the package insert and for the treatment of atrophic vulvitis, vaginitis, cervicitis and the resulting irritation, leukorrhea and malodor.

The stipulated contested issue of fact and law in this action is:

Whether the combination of nitrofurazone and diethylstilbestrol, as formulated into the single suppository form in the drug "Furestrol Vaginal Suppositories" recommended for the treatment of atrophic vaginitis, cervicitis and vulvitis has resulted in that formulation becoming a drug, the composition of which is not generally recognized as safe and effective for these purposes under the conditions recommended, suggested or prescribed in its labeling.

The testimony of the Government's witnesses was to the effect that the drug is not generally recognized as safe and effective for such purpose. Those experts included Dr. John Daniel Thompson, a board-certified obstetrician and gynecologist who is both practitioner and teacher in the field of gynecology, and who is Chairman of the Department of Gynecology and Obstetrics of the Emory University School of Medicine and Chief of the gynecology and obstetric services at both Grady Hospital and the Emory University Clinic. His duties include leadership of a staff having responsibility for the largest number of gynecologic and obstetric patients of any medical school department of Obstetrics and Gynecology in the United States. The other Government expert was Dr. Harry L. Williams, physician and pharmacologist, who is Professor of Pharmacology and Assistant Professor of Medicine at Emory University School of Medicine. Among his duties and responsibilities as a pharmacologist, Dr. Williams is consultant to the drug formulary of the Grady Hospital and is head of the Poison Control Center in the Atlanta area. In addition, he advises practicing physicians, including gynecologists, and lectures to physicians and medical students on the use of drugs both generally and in specific circumstances.

Dr. Thompson testified that, in his opinion, regardless of actual safety or efficacy of Furestrol for its intended uses, the drug Furestrol is not generally recognized among qualified expert gynecologists as safe and effective for those uses. He testified that his opinion on the lack of general recognition of the safety and efficacy of Furestrol was based on his contacts with other experts in the field of gynecology and on his familiarity with the medical literature available to such experts. He pointed out the lack of adequate published information, such as controlled clinical studies, relating to safety or efficacy of Furestrol, on which experts could rely to evaluate the drug. Further, the drug

is not listed on the formulary of approved drugs at Grady Hospital, and apparently had never been recommended or requested for addition to the formulary, since Dr. Thompson, as chief of the gynecology service, would have been called on to review the request, and he could not recall having thought about Furestrol prior to being contacted by the Government concerning this action. These factors, combined with his own training, knowledge and experience, led him to conclude that Furestrol is not generally recognized, among the community of expert gynecologists, as safe and effective for the treatment of atrophic vaginitis.

Dr. Williams testified that, in his opinion, regardless of actual safety or effectiveness of Furestrol for its intended uses, the drug is not generally recognized among qualified expert pharmacologists as safe and effective for those uses. While pharmacologists do not normally administer drugs intended for gynecological use, they are experts qualified by scientific training and experience to evaluate the safety and effectiveness of all drugs, including those intended for use in the field of gynecology. Dr. Williams is the paid consultant to the Grady Hospital Formulary Committee and advises them on which drugs to include. Dr. Williams agreed with Dr. Thompson that the addition of nitrofurazone to diethylstilbestrol was unnecessary and unsafe, since the additional efficacy of such addition has not been demonstrated, while the additional risk of adverse side effects, even if minimal, is acknowledged. The doctor pointed out that there was no evidence available in the medical literature to establish that Furestrol is any more effective than the diethylstilbestrol component used alone might be. He corroborated Dr. Thompson's testimony that Furestrol is not on the formulary at Grady Hospital and added that the drug was not carried in the pharmacy at Emory Clinic. Dr. Williams further testified that the combination of the two active ingredients in a single drug resulted in a new method of administration which,

in his opinion, would be a new drug in pharmacological terms, which would require study of the inter-reaction of its components and of the fixed dosage of those components to determine its safety and effectiveness. Based on the above factors and his training, experience and knowledge as both pharmacologist and physician, and on his familiarity with medical and other scientific literature concerning drugs, including those used in gynecology, Dr. Williams concluded that Furestrol is not generally recognized among the community of expert pharmacologists as safe and effective for the treatment of atrophic vaginitis.

Claimant presented the testimony of three qualified expert gynecologists who stated that, in their opinions, the drug Furestrol was generally recognized among their colleagues as safe and effective for the treatment of atrophic vaginitis as labeled. These witnesses— Dr. Vincent Capraro, of Buffalo, New York; Dr. Warren R. Lang, of Philadelphia, Pennsylvania; and Dr. Paul R. Kearns, of Statesville, North Carolina— all based their opinions largely on their knowledge, familiarity and use of the individual ingredients in a single course of treatment of the disease and their own personal use of Furestrol since it was first introduced commercially. They all agreed that it was the first and only combination drug containing the two ingredients diethylstilbestrol and nitrofurazone which was indicated for the treatment of atrophic vaginitis, although all of them had used a somewhat similar drug containing those ingredients and a third active ingredient which was not recommended for treatment of atrophic vaginitis. They also agreed that there was no evidence of controlled studies in the medical literature available to the practicing gynecologist prior to introduction of the drug in interstate commerce demonstrating that Furestrol was safe and effective for its intended uses. In addition, none of the witnesses had seen any adverse effects from intravaginal use of the ingredient nitrofurazone, although all three were aware of

references to adverse effects in the medical literature.

Dr. Capraro, whose major interest is in pediatric and adolescent gynecology, testified to his long use of estrogens and antibacterial drugs in a single course of treatment of atrophic vaginitis. He began using Furestrol as soon as it was available and he formed a clinical impression from his continued use that the drug is safe and effective for its intended uses. He testified that, in his opinion, based on his knowledge of the ingredients and the disease, the drug is similarly generally recognized among the professional community of gynecologists.

Dr. Lang testified that the ingredient diethylstilbestrol is generally used for treatment of atrophic vaginitis and that an antibacterial drug may be used to treat the accompanying infection. He stated that the two types of drugs—estrogen and antibacterial—are usually combined when the case of atrophic vaginitis is severe. Dr. Lang testified that, in his opinion, Furestrol is generally recognized as safe and effective as labeled because the average gynecologist would feel that it is safe and effective on the basis of the drug's contents. Dr. Lang would recommend the use of Furestrol where the particular case of atrophic vaginitis is causing the patient difficulty and the area is severely inflamed.

Dr. Kearns, presently a consultant to the claimant, testified to his long use of the two ingredients in a single course of therapy and to discussions with many other colleagues who used that method of treatment and who suggested combining the ingredients into a single suppository. Dr. Kearns had been consulted by claimant during the development and marketing of the drug Furestrol. Based on his knowledge, training and experience, his knowledge of the medical literature relating to the ingredients of Furestrol, his contacts with other gynecologists who used those ingredients in a single course of therapy or who use Furestrol itself, Dr. Kearns concluded that the drug is generally recognized as safe

and effective as labeled for the treatment of atrophic vaginitis.

This Court has jurisdiction of the case by virtue of the provisions of 21 U.S.C. § 334, which provides for the seizure and condemnation of articles of drug that are "new drugs" and are shipped in interstate commerce without an approved new drug application effective for such drug under 21 U.S.C. § 355.

The single issue in this case has been stipulated by both sides to be whether Furestrol is a "new drug" as defined by the Federal Food, Drug, and Cosmetic Act. The Act defines "new drug" in 21 U.S.C. § 321(p) (1) as:

Any drug the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof.

The Court is not required to find that the drug Furestrol is actually unsafe or ineffective for its intended uses. It must be proven to the satisfaction of the Court that Furestrol was not generally recognized by qualified experts as being both safe and effective for those uses when shipped in interstate commerce. In the case of AMP, Inc. v. Gardner, 2 Cir., 389 F.2d 825, the Court there stated:

AMP contends that the defendants' motion for summary judgment should not have been granted because there remained an issue as to the safety and efficacy of AMP's products. But the safety of the products is not what is at issue here. The question is whether there is general recognition among qualified experts of the products' safety and effectiveness—if there is not, the products must be submitted to the Secretary of Health, Education and Welfare for a determination as to safety, adequacy of testing, etc.

In a discussion of what drugs are "new drugs" under the statute in

question, the Court in Merritt Corporation v. Folsom, D.C., 165 F.Supp. 418, put forward the rule:

> Where there is a genuine difference of medical opinion among the experts on the question of whether a drug is generally recognized as safe for the treatment of a particular disease, it must be concluded that the drug is not generally recognized as safe for use in the treatment of that disease.

Again, in the case of United States v. 354 Bulk Cartons, etc., D.C., 178 F.Supp. 847, the law was stated in terms similar to those in the cases above. Here the question involved was whether a weight-reducing cigarette was a "new drug". The Court in holding that the cigarette was a "new drug" within the definition of the Federal Food, Drug, and Cosmetic Act said:

> Where there was a genuine difference of opinion among experts, qualified by scientific training and experience, to evaluate safety of weight-reducing cigarettes which constituted a drug, such cigarettes thereby constituted a "new drug" within the Federal Food, Drug and Cosmetic Act.

■ The law in this area is very clear. The only question presented is a factual one as to whether there is a genuine difference of opinion among experts, qualified by scientific training and experience. Upon consideration of all the testimony of the expert witnesses, and in light of the evidence presented, the Court is of the opinion that there is a genuine difference of opinion as to recognized safety and effectiveness of Furestrol. The Court does not hold that Furestrol is unsafe or ineffective; however, this Court does rule that Furestrol Vaginal Suppositories, under the facts herein, is a new drug within the meaning of 21 U.S.C. § 321(p) (1), since it is not generally recognized among qualified experts as safe and effective for its intended use, which was shipped in interstate commerce without an approved new drug application effective for such drug in violation of 21 U.S.C. § 355.

Libelant is entitled to a decree of condemnation and destruction pursuant to 21 U.S.C. § 334(a) (1) and (d).

This opinion is adopted by the Court as the Findings of Fact and Conclusions of Law, as provided by Rule 52, Federal Rules of Civil Procedure.

It is so ordered.