UNITED STATES of America,
Plaintiff,

v.

An ARTICLE OF DRUG . . .
"MYKOCERT.", Defendant.

No. 71 C 235.

United States District Court,
N. D. Illinois,
Eastern Division.

May 19, 1972.

William Bauer, U. S. Atty., Robert B. Schaefer, Asst. U. S. Atty., for plaintiff.

Kirkpatrick W. Dilling, Dilling & Dilling, Chicago, Ill., for claimant Beutlich Pharmaceutical Co.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

On January 29, 1971, subsequent to the filing of a Complaint For Forfeiture, the Plaintiff seized a quantity of the prescription drug, Mykocert medicated vaginal tampons pursuant to the provisions of 21 U.S.C. § 301 et seq. and now seeks a decree of condemnation in regard to the drug seized.

The Complaint alleges that the seized article of drug was misbranded while held for sale after shipment in interstate commerce within the meaning of the Act, 21 U.S.C. as follows:

§ 352(a) in that its labeling, namely, the box label, contains statements which represent and suggest that the article is adequate and effective as a treatment of most vaginal infections caused by Gram-positive and Gram-negative organisms, which statements are false and misleading, since the article is not adequate and effective for such conditions; and

352(f) (1) in that it is a drug and its labeling fails to bear adequate directions for use and it is not exempt from such requirement, under the regulations, 21 CFR 1.106(g), since the article is a new drug subject to the provisions of 21 U.S.C. § 355, and no approval of an application filed pursuant to 21 U.S.C. § 355(b) is effective with respect to such drug, and no notice of claimed investigational exemption under 21 U.S.C. § 355 (i) and regulations 21 CFR 130.3 is on file for such drug.

Beutlich, Inc., the pharmaceutical company which manufactures Mykocert, filed a claim for the seized articles and interrogatories were subsequently served and answered by both sides. Plaintiff has filed a motion for summary judgment and claimant has filed a cross-motion for summary judgment, both motions appended by a voluminous amount of affidavits, expert's opinions and substantiating material. Both Plaintiff and claimant were granted leave for oral argument on their respective motions and all parties entered into the very important stipulation that should the Court decide that it cannot or does not wish to dispose of the case within the limitations of the summary judgment rule that it may proceed to decide on the merits taking into consideration the affidavits, depositions, interrogatories and other information now on file as refined and distilled by oral argument. We are now prepared to render that decision.

The seeming complexity of this action diminishes, once the critical issue around which the entire case revolves is isolated. The drug here in question consists of a tampon impregnated with 14 mgs. of the chemical ingredient 9-aminoacridine hydrochloride and a "binder" of 14 mgs. of polyvinylpyrrolidone which Beutlich markets as a prescription drug for the alleviation of various vaginal infections. The tampon is inserted in the convention-

al manner and its intended purpose is to slowly release the medication onto the infected area. The Government in its 21 U.S.C. § 352(a) argument contends that purpose falls short of accomplishment and that the labeling statements in regard to its adequacy and effectiveness are therefore false and misleading in violation of the statute. Though not in any way conceding any part of these allegations the Government's briefs concentrated on the second part of its argument in regard to the 21 U.S.C. § 352(f) (1) violations.

There are five conceivable defenses that claimant could have raised to the Government's § 352(f) (1) grounds for forfeiture. It could have claimed that Mykocert indeed bore adequate instructions for lay use as required by § 352 (f) (1) and 21 CFR 1.106(a) but was foreclosed from doing so since Mykocert is a prescription drug and by its very nature cannot bear such instructions. It could have claimed exemption from the adequate directions requirement as provided by 21 CFR 1.106(g) for new drugs but no approval of an application pursuant to 21 U.S.C. § 355(b) was effective for Mykocert and no notice of claimed investigational exemption under 21 U.S. C. § 355(i) and 21 CFR 130.3 has been filed with the United States Food and Drug Administration which would have allowed for such an exemption. Mykocert could have qualified for the prescription drug exemption provided for by 21 CFR 1.106(b) by bearing labeling authorized by an approved new drug application but claimant has not filed a new drug application. The fifth and final avenue and the one chosen by claimant is that Mykocert is not a "new" drug as defined in 21 U.S.C. § 321 and 21 CFR § 130.1 and that even though § 352 (f) (1) is inapplicable because of the drug's prescriptive nature the non-newness of the drug exempts it from any of the requirements of the previously mentioned alternatives such as application or filing with the Federal Drug Administration. Thus the entire crux of the case is dependent on the one critical

decisive issue as whether Mykocert is or is not a new drug.

The criteria for determining whether or not a drug is "new" appears in various statutes and regulations and is further delineated by numerous cases.

The essential starting point in a definitional survey of a "new drug" is 21 U.S. C. § 321 which states:

(p) The term "new drug" means—

(1) Any drug . . . the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof . . . .

The regulations in 21 CFR § 130.1(h) further indicate the various conceivable manifestations of "newness":

(h) The newness of a drug may arise by reason (among other reasons) of:

(1) The newness for drug use of any substance which composes such drug, in whole or in part, whether it be an active substance or a menstruum, excipient, carrier, coating, or other component.

(2) The newness for drug use of a combination of two or more substances, none of which is a new drug.

(3) The newness for drug use of the proportion of a substance in a combination, even though such combination containing such substance in other proportion is not a new drug.

(4) The newness of use of such drug in diagnosing, curing, mitigating, treating, or preventing a disease, or to affect a structure or function of the body, even though such drug is not a new drug when used in another disease or to affect another structure or function of the body.

(5) The newness of a dosage, or method or duration of administration or application, or other condition of use prescribed, recommended, or sug-

gested in the labeling of such drug, even though such drug when used in other dosage, or other method or duration of administration or application, or different condition, is not a new drug.

The words "generally recognized" as they appear in 21 U.S.C. § 321(p) are terms of art and their interpretation as in the context of drug usage poses various problems that have led to the case law development of certain objective indications of recognition and non-recognition.

One indication that a drug is not generally recognized among qualified experts as safe and effective for its intended use, that some Courts have accepted, is the absence of any published medical or scientific literature relating to the usage of the drug since the lack of documented sources of information perforce curtails the widespread knowledge of the drug's effectiveness or safety. This test by itself has been recognized as determinative of "newness" by several cases especially in this district. United States v. An Article of Drug . . . Xerac 70 C 106 (N.D.Ill. April 29, 1971); United States v. Aspersleep, 70 C 196 (N.D.Ill. September 15, 1971). See also United States v. 41 Cases . . . Myconox, 420 F.2d 1126 (5th Cir. 1970); United States v. Article of Drug (Norwich Pharmacal), 415 F.2d 390 (5th Cir. 1969); United States v. Article of Drug . . . Furestol Vaginal Suppositories, 294 F.Supp. 1307 (N.D.Ga.1968).

Other Courts have searched for proof of general recognition in different, other directions and have required a higher degree of proof to establish non-recognition. The most common procedure is the disposition of the cause in drug cases of this nature on cross-motions for summary judgment which are accompanied by various affidavits attesting to the non-recognition or general recognition of the drug as the case may be. These affidavits must be directed not at the "safe and effective" portion of 21 U.S.C. § 321 (p) but at the "generally recognized" portion and actual safety and effectiveness is not at issue under this test. Thus actual safety proven by a small sampling short of general recognition is not sufficient to cure violations of the regulations applying to new drugs. AMP v. Gardner, 389 F.2d 825 (2nd Cir.1968); United States v. 41 Cases . . . Naremco, Inc., 420 F.2d 1126 (5th Cir. 1970); Tyler Pharmacal Dist., Inc. v. HEW, 408 F.2d 95 (7th Cir. 1969); United States v. Article of Drug . . . Furestol Vaginal Suppositories, supra.

Some difficulty has been encountered by the Courts in determining precisely what degree of recognition both in quantity and quality constitutes "general recognition" under the statute and that task is rendered all the more difficult when it must be accomplished within the strict confines of the summary judgment rule on the basis of conflicting affidavits which all claim expertise in the field. Some cases have taken the position that the mere existence of conflict between qualified experts in supporting affidavits establishes a lack of general recognition as a matter of law (See Merrit Corp. v. Folsom, 165 F.Supp. 418 (D.D.C.1958)) while other Courts in dicta attempted to soften the mere conflict rule where a genuine difference of opinion exists since general recognition ought not mean unanimous recognition. United States v. 7 Cartons . . . Ferro-Lac, 293 F.Supp. 660 (S.D.Ill.1968); AMP v. Gardner, 389 F.2d 825 (2nd Cir. 1968)).

In addition to the various rules that have evolved in regard to the weight given affidavits in such an action certain guidelines developed pertaining to the qualifications of the affiants and the content of the affidavits. Some Courts have pointed out that the personal opinions of experts are not adequate to establish general recognition and that the affidavits should instead attest to the existence of the opinion or recognition in the general community. AMP v. Gardner supra; United States v. 7 Cartons . . . Ferro-Lac supra. Furthermore the affiant expert must be one qualified by

scientific training and experience to evaluate the safety and effectiveness of drugs and cannot simply be a medical practitioner whose only knowledge is based on prescribing the drug for his own patients. United States v. 7 Cartons . . . Ferro-Lac *supra*.

Thus we have a fairly well established body of law to apply to the facts in our case. It must be noted that many of the problems encountered in determining general recognition are a result of the limitations of the summary judgment procedure. While we do not in any way dispute the validity of the absence-of-a-body-of-literature test, or express an opinion as to soundness of the mere conflict of affidavits test, or in any way cast doubt on the continuing viability of summary judgment disposition of drug cases where appropriate, it must be admitted that there is greater leeway available to the Court where it can decide subjective facts in addition to applying objective tests. The opportunity to decide facts as well as law allows for a broader range of information and evidence to be taken into consideration, including the aforementioned tests. Granted that there may indeed be sufficient information available for summary disposition our approach further eliminates any subsequent dispute as to whether any issue of fact existed since any such issue of fact is resolved by the Court. In view of this we have taken advantage of the stipulation by the parties that this Court may decide issues of fact as well as issues of law.

In applying the statutes, regulations and cases to our set of facts we find the Government's position to be the correct one.

■■ Claimant's contention that Mykocert is not a new drug can only succeed if it is recognized by experts in the field as safe and effective. There are two possible alternatives that would substantiate claimant's assertions. Either a Mykocert type drug in its exact form, dosage, and application must be recognized by experts (even though that drug may be marketed under a different name) or

each of the component parts of Mykocert must be recognized with the critical caveat that the combination of these parts does not in any way create a new drug under 21 CFR § 130(h).

It is clear from the affidavits, documents and all other evidence that though there are other dosages and forms of application for the *type* of drug here involved, there is however no general recognition under any construction of that test for Mykocert in its exact form.

Literature on Mykocert in its exact form is virtually nonexistent, no less a body of literature, and there is no expert opinion available as to the general recognition of a 14 mgs. dosage of 9-aminoacridine applied in a tampon form and claimant therefore cannot succeed with the contention that a Mykocert type drug itself is recognized. Without going into great detail the few affidavits that address themselves to Mykocert itself rather than to its component parts are inadequate, since they focus on safety and effectiveness rather than general recognition and furthermore are by practitioners prescribing the drug for patients rather than experts in the field. (See 294 F.Supp. 1307 *supra* at 1309–1310).

■ In addition it is difficult for this Court to acknowledge the general recognition of Mykocert when the chairmen of the Obstetrics and Gynecology Departments at Chicago Medical School; State University of New York, Downstate Medical Center; Northwestern University Medical School; and Loyola University Medical Center all swear that Mykocert is not generally recognized. While we do not express an opinion as to whether a "mere" conflict in expert opinion constitutes lack of general recognition, it cannot be denied that the affidavits of five of the leading doctors in the field which deny general recognition creates more than a "mere" conflict. It is inconceivable that a drug such as this could be considered generally recognized in the face of such learned non-recognition.

■■ Yet even if these experts claim that Mykocert is not generally recognized in its present state, claimants

might still attempt to salvage Mykocert by using the other avenue available—that absence of recognition for Mykocert as such is irrelevant given the fact that its component parts are generally recognized. Claimant does in fact place great faith in this contention by directing a vast amount of literature to the effectiveness and recognition of tampons and aminoacridines generally for use on infections. In order for this argument to succeed Mykocert in its present state must be similar enough in form, dosage, purpose, and application to the general usage of aminoacridines so as to be within the genre "aminoacridine" and the general recognition attributed to that genre. If Mykocert deviates in any substantial degree from previous forms of aminoacridine usage then it cannot rely on the general recognition of its component parts. The regulations in fact indicate that combinations of "old" drugs may be a "new" drug as is stated in 21 CFR 130.1(h) (1) through (5). See *supra*, pages 6 and 7.

■ Simply stated *under the drug laws the whole of a drug may be greater or "newer" than all of its parts.*

How critical this factor becomes to our case is evidenced in the fact that the vast majority of claimants' affidavits and documents are directed at the recognition of the component parts of Mykocert rather than to the exact form and dosage of Mykocert. There is a vast amount of literature on aminoacridines, affidavits on the efficacy of and recognition of aminoacridines and literature on tampon usage and claimant adds up the general recognition of tampon usage and 9-aminoacridine usage and comes up with a total of non-newness. Thus if we determine that Mykocert is more than just the component parts of tampons and aminoacridines, claimant is practically foreclosed from succeeding based on its almost total reliance on affidavits directed at the component parts rather than the whole.

■ In adding up the tampon and aminoacridine usage we do not come up with a total of Mykocert. In view of the fact that the 14 mgs. dosage of Mykocert

is a much larger dosage than used in other aminoacridine medications for vaginal infections; given the tampon form of application which is unlike gell tablet and cream form of application of vaginal infection medication; that the element of polyvinylpyrrolidone is added as a chemical binder, we hold that Mykocert is a new drug as defined in 21 CFR § 130.1 (h) (5) i. e. "The newness of a dosage or method or duration of administration or application [constitutes newness] . . . even though when used in other dosage, or method of duration or administration on application . . . is not a new drug."

We believe that the new dosage and form of application creates greater risks and questions of safety and effectiveness than previously recognized forms of medication for vaginal infections and given the delicate area of its application—warrants a finding of "newness."

We are supported by two recent cases in our district in regard to combinations. Both United States v. . . . Aspersleep, 71 C 235 and United States v. . . . Xerac, 70 C 106 dealt with component parts that might have been generally recognized yet found that there was no general recognition for the new drug formed by the combination.

The fact that Mykocert is sufficiently newer than its component parts renders the greater amount of claimant's substantiating evidence irrelevant since it applies only to the parts rather than the whole.

To summarize, then, we are satisfied that based on all the documents and evidence submitted there is no general recognition among qualified experts that Mykocert as such is safe and effective and that claimant cannot rely on the recognition of its component parts since the combination is a new drug within the meaning of the regulations. Mykocert is therefore a new drug and not exempt from the statutes under which forfeiture by the Government was accomplished.

Judgment will be entered for the United States.